IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Mark Grant,                          :

     Plaintiff,                     :

v.                                   : Case No. 2:10-cv-823

Target Corporation,                  : Magistrate Judge Kemp

     Defendant.                     :


OPINION AND ORDER

This employment discrimination case is before the Court to consider plaintiff Mark Grant's renewed motion for leave to amend his complaint (Doc. #29), defendant Target's motion to compel discovery (Doc. #30), Target's motion to extend the discovery schedule (Doc. #38), Target's motion for summary judgment (Doc. #41), Target's motion to strike four affidavits (Doc. #44), Target's motion to schedule a status conference and final pre-trial conference (Doc. #52), Target's motion to strike Mr. Grant's opposition to Target's motion to strike or in the alterative, a reply in support of Target's motion to strike (Doc. #55), and Target's motion to strike Mr. Grant's response to Target's reply in support of its motion for summary judgment (Doc. #56).  For the following reasons, the motion to amend will be granted; the motion to compel will be granted; the motion to extend discovery will be denied as moot; the motion for summary judgment, the motion to strike four affidavits, the motion to strike Mr. Grant's opposition to Target's motion to strike, and the motion to strike Mr. Grant's response to Target's summary judgment reply will be denied without prejudice; and the motion to schedule a status conference and final pre-trial conference will be denied as moot.

     I. <u>Renewed Motion to Amend Complaint (Doc. #29)</u>

Mr. Grant filed his original complaint on September 14, 2010. It named only Target Corporation as a defendant and asserted a race discrimination claim. (Doc. #2). On June 3, 2011, within the Court's deadline for filing motions to amend, Mr. Grant filed a motion to amend his complaint (Doc. #16), stating that he wanted to add three individual defendants, Mark Nealon, Aaron Young, and Naomi Brook. (Doc. #17). On August 23, 2011, this Court denied Mr. Grant's motion to amend without prejudice, and cautioned him that any renewed motion to amend must be accompanied by the proposed amended complaint. (Doc. #28). His renewed motion, filed thirty days later, states that he wishes to name four individuals, Mark Nealon, Aaron Young, Naomi Brook, and Marty Atwell as additional defendants. He has attached an amended complaint with numerous pages detailing these individuals' alleged involvement in the case. (Doc. #29). In its response, Target argues that allowing Mr. Grant to amend his complaint would be futile, unduly prejudicial, a violation of Fed. R. Civ. P. 16(b), and a violation of S.D. Ohio Local Rule 7.2(a)(1).

Fed. R. Civ. P. 15(a) requires the Court to grant leave to amend "freely" if "justice so requires." Reasons for denying a motion for leave to amend include undue delay, prejudice to the opposing party, and futility of the amendment. See generally Phelps v. McClellan, 30 F.3d 658, 662 (6th Cir. 1994); Midkiff v. Adams County Req'l Water Dist., 409 F.3d 758, 767 (6th Cir. 2005). The Complaint must comply with federal pleading standards as interpreted by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), which require that the complaint contain enough factual allegations (and not just legal conclusions) to make recovery against the defendants "plausible." There is some conceptual difficulty presented, however, when the

primary basis for a party's opposition to the filing of an amended pleading is that the pleading is futile, *i.e.* that it fails to state a claim upon which relief can be granted. Denying a motion for leave to amend on grounds that the proposed new claim is legally insufficient is, at least indirectly, a ruling on the merits of that claim.

At least where the claim is arguably sufficient, it is usually a sound exercise of discretion to permit the claim to be pleaded and to allow the merits of the claim to be tested by way of a motion to dismiss. "The trial court has the discretion to grant a party leave to amend a complaint, even where the amended pleading might ultimately be dismissed." Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Md., 715 F.Supp. 578, 581 (S.D.N.Y. 1989). Consequently, rather than determining the actual legal sufficiency of the new claim, in many cases it will suffice to determine if there is a substantial argument to be made on that question and, if so, to allow the amended pleading to be filed with the understanding that a motion to dismiss for failure to state a claim may follow.

In its August 23, 2011 order, the Court noted that although individual managers or supervisors cannot be held liable under Title VII, individual managers and supervisors can be held liable jointly with a corporate employer for acts of discrimination under Ohio law. (Doc. #28, p. 3). "Thus, if a complaint sufficiently states a claim for discrimination against a corporate employer and also alleges that certain managers or supervisors committed individual acts of discrimination against the plaintiff, the complaint would also state a cause of action against them." (Doc. # 28, p. 4).

Mr. Grant's amended complaint contains multiple pages of allegations against Target and various employees that work there, including the proposed new defendants Mr. Nealon, Mr. Young, Ms.

3

Brook, and Mr. Atwell.  Target argues that his allegations against the proposed defendants are not sufficient, under Twombly and Iqbal, to state a claim for discrimination against these individuals under Ohio law, but Target has not developed these arguments with citations to appropriate  governing federal and state employment law.  See Dillery v. City of Sandusky, 398 F.3d 562, 569 (6th Cir. 2005)("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")(internal quotations omitted)).  Moreover, the Court is required to construe complaints filed by parties who are not represented by attorneys in a liberal fashion.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Thus, this Court will not deny Mr. Grant's renewed motion to amend his complaint at this stage in the litigation based on the grounds of futility.   Beyond its arguments relating to futility, Target also raises the issue of prejudice.  It argues that it would have to start its defense over from the beginning to respond to Mr. Grant's new allegations and the addition of new defendants.

In Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971), the Court indicated that mere delay, of itself, is not a reason to deny leave to amend, but delay coupled with demonstrable prejudice either to the interests of the opposing party or of the Court can justify such denial.

Expanding upon this concept, the Court of Appeals has noted that:

> [i]n determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction.

Phelps v. McClellan, 30 F.3d 658, 662-663 (6th Cir. 1994).  See

4

also Moore v. City of Paducah, 790 F.2d 557 (6th Cir. 1986); Tefft v. Seward, 689 F.2d 637 (6th Cir. 1982). Stated differently, deciding if any prejudice to the opposing party is "undue" requires the Court to focus on, among other things, whether an amendment at any stage of the litigation would make the case unduly complex and confusing, see Duchon v. Cajon Co., 791 F.2d 43, 48 (6th Cir. 1986) (per curiam), and to ask if the defending party would have conducted the defense in a substantially different manner had the amendment been tendered previously. General Electric Co. v. Sargent and Lundy, 916 F.2d 1119, 1130 (6th Cir. 1990). See also Davis v. Therm-O-Disc, Inc., 791 F. Supp. 693, 695 (N.D. Ohio 1992).

The District Court must also take into account whether there has been a repeated failure to cure deficiencies in the pleading, Robinson v. Michigan Consolidated Gas Co., 918 F.2d 579, 591 (6th Cir. 1990); Head, 870 F.2d at 1123 (6th Cir. 1989), or whether "the matters contained in the amended complaint could have been advanced previously so that the disposition of the case would not have been disrupted by a later, untimely amendment." Ridenour v. Collins, 692 F. Supp.2d 827, 843 (S.D. Ohio 2009).

Mr. Grant's proposed complaint is not overly complex or confusing. Although he seeks to add four individual defendants to the case, his legal claims remain relatively simple- race discrimination under federal and Ohio law. There is no reason to believe Target would have conducted its defense in a substantially different manner had the amendment been tendered previously. Although the original complaint was filed only against Target, it contained allegations against both Mr. Young and Mr. Nealon that Target no doubt has already explored in discovery. Any additional allegations yet to be explored against those individuals or against Mr. Atwell or Ms. Brooks would not likely require duplicative discovery.

Further, it does not appear that Mr. Grant waited an inordinate amount of time to add the claims against the new defendants. His original motion to amend his complaint was timely (Doc. #17) and was denied without prejudice (Doc. #28). He renewed that motion just one month after this Court's order inviting him to do so (Doc. #29). This is his first attempt to amend his complaint. Mr. Grant's renewed motion was filed prior to the close of discovery and prior to the dispositive motions deadlines. Thus, this case is not comparable to cases such as Duggins v. Steak 'n Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999), where the plaintiff delayed pursuing his new claims until after the discovery and dispositive motions deadlines had passed.

Although this amendment will result in some delay, delay itself is not a valid reason for denying leave to amend where little prejudice is shown. Although this Court will have to reopen discovery, Target itself has a motion to compel discovery pending before this Court that, if granted, will prolong the discovery period and require the Court to extend this case schedule. Thus, this Court does not find that Mr. Grant's motion has unduly prejudiced Target.

Target next argues Mr. Grant has violated Rule 16(b) by failing to demonstrate good cause for moving to amend the complaint beyond the deadline for amendments which was established in the initial pretrial order. Fed. R. Civ. P. 16(b) requires the Court, in each civil action which is not exempt from that rule, to "enter a scheduling order that limits the time" to, inter alia, join other parties, amend the pleadings, and complete discovery. The rule further provides that "[a] schedule may be modified only for good cause and with the judge's consent." The touchstone of "good cause" under Rule 16(b) is not the presence or absence of prejudice to the non-moving party – although that is a factor – but, rather, "'[t]he primary measure of Rule 16's

6

'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements.'" Inge v. Rock Financial Corp., 281 F.3d 613, 625 (6th Cir. 2002), quoting Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001).  In this case, the deadline for filing such motions was June 3, 2011, which is the date that Mr. Grant initially filed his motion.

This Court's August 23, 2011 order denied that motion without prejudice to its renewal.  Mr. Grant responded promptly to that order.  The logical implication of this sequence of events is that the Court granted Mr. Grant leave to file beyond the deadline if his renewed motion simply corrected the errors he made in his first filing.  Therefore, this Court believes Mr. Grant has shown the diligence required in attempting to meet this Court's scheduling order.

Lastly, Target argues Mr. Grant failed to comply with S.D. Ohio Local Rule 7.2(a)(1), which requires that all motions be accompanied by a memorandum in support.  But this Court's order on August 23, 2011 stated that Mr. Grant would be permitted to file a renewed motion to amend his complaint as long as the motion was accompanied by his amended complaint alleging facts that each defendant, acting in a supervisory or managerial capacity, discriminated or retaliated against him in connection with his past employment by Target. (Doc. #28, pp. 5-6).  Mr. Grant appears simply to have done what the Court told him to do. The Court will not deny his motion for leave to amend simply for not filing a memorandum in support.

## II. Motion to Compel Discovery (Doc. #30)

The facts relating to Target's motion to compel are taken from Target's motion to compel and Target's reply in support of its motion to compel. (Docs. #30 & #34).  Mr. Grant has not provided this Court with a contrary statement of facts. Although

7

he suggests that Target's motion is "laced with inaccuracies," he does not contest any specific facts they have alleged, so this Court will accept Target's statement of facts as true for purposes of this order only.

Target sent interrogatories and requests for production of documents to Mr. Grant on May 11, 2011. Under Fed. R. Civ. P. 33(b)(2), he had 30 days to respond. On June 14, 2011, Target agreed to extend Mr. Grant's time to respond to June 17, 2011. (Doc. #30, Ex. C). On June 17, 2011 Mr. Grant answered the interrogatories, signed his answers, and submitted them to Target sometime thereafter. (Doc. #30, Ex. D). Although Mr. Grant attached a number of documents to these interrogatories, he did not specifically answer Target's requests for production of documents in writing or organize or label the attached documents to respond to the categories in Target's requests.

On July 12, 2011, Target's counsel sent Mr. Grant a letter asserting that Mr. Grant's interrogatory responses were deficient and that he failed to sign authorizations allowing Target to conduct non-party discovery to determine the scope of Mr. Grant's damages and mitigation efforts. (Doc. #30, Ex. E). Target's counsel also informed Mr. Grant that he failed to respond to the requests for production of documents, thereby waiving his objections to them. The letter asked Mr. Grant to provide full responses by July 22, 2011.

On July 17, 2011, Mr. Grant mailed his "Production of Documents to Defendant Target." (Doc. #30, Exhibit F). Again, he did not make a separate written response to the request, did not assert objections, and did not organize or label the documents to respond to the categories in Target's request. He produced only two exhibits: a mini-cassette tape and a letter from Mr. Grant to the Ohio Job and Family Services, Unemployment Compensation Review Commission.

8

On July 20, 2011, Target sent Mr. Grant a second letter, stating he failed to answer Target's requests for production of documents, to produce the responsive documents, and to sign the requested authorizations. (Doc. #30, Ex. G).  The letter asked Mr. Grant to answer Target's document request and return the requested authorizations by July 29, 2011.

On July 29, 2011 Target's counsel again requested discovery responses from Mr. Grant. (Doc. #30, Ex. G).  That same day, Mr. Grant responded and objected for the first time to Target's request for production as follows:

> I object to providing any additional documents for your review that are not pertinent to this case. However, I will gladly provide any and all documents related to this case as part of discovery for, "the judges eyes only," as the documents you are requesting are highly privileged in nature and are not for public viewing. Pursuant to rule 26.1, these documents will be clearly provided to the judge in the form of a log in the order that they were received.

(Doc. #30, ex. H).  Since that time, Mr. Grant has not moved for a protective order regarding the information he claims is privileged, has not provided either Target or this Court with a privilege log identifying the documents he believes to be privileged, and has not identified which privilege protects the documents in question.

In response to Mr. Grant's email, on August 1, 2011, counsel for Target replied to Mr. Grant that he was required to respond to the interrogatories and provide responsive documents under the Federal Rules; that if documents were privileged, he had failed to so designate this fact in his responses and had failed to seek a protective order; and that he had failed to provide a privilege log. The letter concluded, "Given this impasse, we see no other option than to seek the court's intervention in this matter and to seek our attorney's fees and costs in doing so." (Doc. #30, Ex. H).

On August 18, 2011 this Court held a telephone conference and ordered the parties to attempt to resolve their disputes without judicial intervention and to bring all requested discovery to the mediation scheduled for September 12, 2011. At the mediation, Mr. Grant produced two more documents: a 2009 W2 from Target and a W2 from a temporary agency indicating that Mr. Grant earned approximately $5,000. Mr. Grant told the mediator that he would produce answers to Target's requests for production and provide the requested documents by Thursday, September 15, 2011. According to the motion to compel, Mr. Grant did not do so.

Target filed its motion to compel discovery on September 26, 2011. Mr. Grant then produced to Target a document that appeared to be Mr. Grant's second attempt to answer Target's interrogatories, which was signed by Mr. Grant on October 5, 2011. (Doc. #34, Exhibit I). Mr. Grant again did not respond to the requests for production of documents, but did attach a number of additional documents to his interrogatory responses. On October 13, 2011, Mr. Grant filed with this Court a third set of responses to Target's interrogatories (Doc. #33) that contained answers that varied from those contained in his second set of responses, although attaching the same documents. Mr. Grant also sent this third set of responses to Target with a handwritten note advising Target to "disregard" his second set of responses. (Doc. #34, Ex. J).

In what appears to be a sur-reply to Target's motion to compel (Doc. #35), Mr. Grant has alleged that his responses, while brief, have been truthful and factual, that Target itself has failed to produce documents showing that the "racial incident" was investigated, that certain individuals were not included in Target's initial disclosures, and that Target had misplaced a portion of Mr. Grant's W2 form. Attached to his sur-

10

reply is an email string describing graffiti in the Target central receiving break room, three pictures of what appear to be bathroom toilet paper dispensers, and a copy of Target's initial disclosures.

It is important for all litigants, including those proceeding without counsel, to understand that the Federal Rules of Civil Procedure authorize extremely broad discovery. United States v. Leggett & Platt, Inc., 542 F.2d 655, 657 (6th Cir. 1976), cert. denied 430 U.S. 945 (1977). Therefore, Fed. R. Civ. P. 26 is to be liberally construed in favor of allowing discovery. Dunn v. Midwestern Indemnity, 88 F.R.D. 191, 195 (S.D.Ohio 1980). Any matter that is relevant, in the sense that it reasonably may lead to the discovery of admissible evidence, and is not privileged, can be discovered. The concept of relevance during discovery is necessarily broader than at trial, Mellon v. Cooper-Jarrett, Inc., 424 F.2d 499, 500-501 (6th Cir. 1970), and "[a] court is not permitted to preclude the discovery of arguably relevant information solely because if the information were introduced at trial, it would be 'speculative' at best." Coleman v. American Red Cross, 23 F.3d 1091, 1097 (6th Cir. 1994). A district court enjoys broad discretion in managing discovery. Lavado v. Keohane, 992 F.2d 601, 604 (6th Cir. 1993).

Information subject to disclosure during discovery need not relate directly to the merits of the claims or defenses of the parties. Rather, it may also relate to any of the myriad of fact-oriented issues that arise in connection with the litigation. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). On the other hand, the Court has the duty to deny discovery directed to matters not legitimately within the scope of Rule 26, and to use its broad discretionary power to protect a party or person from harassment or oppression that may result even from a facially appropriate discovery request. See Herbert

11

v. Lando, 441 U.S. 153, 177 (1979).  Additionally, the Court has discretion to limit or even preclude discovery which meets the general standard of relevance found in Rule 26(b)(1) if the discovery is unreasonably duplicative, or the burden of providing discovery outweighs the benefits, taking into account factors such as the importance of the requested discovery to the central issues in the case, the amount in controversy, and the parties' resources.  See Fed. R. Civ. P. 26(b)(2).  Finally, the Court notes that the scope of permissible discovery which can be conducted without leave of court has been narrowed somewhat by the December 1, 2000 amendments to the Federal Rules. Rule 26(b) now permits discovery to be had without leave of court if that discovery "is relevant to the claim or defense of any party ...." Upon a showing of good cause, however, the court may permit broader discovery of matters "relevant to the subject matter involved in the action." Id.

Although Mr. Grant is acting pro se without counsel, this does not excuse him from producing discovery.  In re Family Resorts of America, Inc., No. 91-4127, 1992 WL 174539, *3 (6th Cir. July 24, 1992).  See also McNeil v. United States, 508 U.S. 106, 113 (1993); Black v. Columbus Public Schools, No. 2:96-cv-326, 2011 WL 1990579, *3 (S.D. Ohio May 23, 2011).  The Court of Appeals has made clear that "while pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer." Jourdan v. Jabe, 951 F.2d 108, 109 (6th Cir. 1991).  Pro se litigants are not to be accorded any special consideration when they fail to adhere to readily-comprehended court deadlines. Id. at 110.

Target has moved this Court to compel Mr. Grant to respond

to its discovery requests. Under Fed. R. Civ. P. 37, a party seeking discovery may move for an order compelling an answer, designation, production or inspection.  Such a motion may be made if, among other things, "a party fails to answer an interrogatory submitted under Rule 33" or "a party fails to respond that inspection will be permitted--or fails to permit inspection--as requested under Rule 34."

This Court has reviewed all the interrogatories and requests for production of documents and has concluded that they are relevant or, at the very least, may lead to the discovery of admissible evidence.  Because Mr. Grant submitted a second set of interrogatories that he later requested be "disregarded," this Court will only look to the answers he provided in his third set of interrogatory responses when deciding this motion.

As an introductory matter, the Court notes that Target takes issue with Mr. Grant's responses to interrogatory nos. 6, 14, and 17.  It claims that the responses in one version are inconsistent with the responses in another version. These inconsistencies, however, are not appropriately addressed in a motion to compel discovery.  Mr. Grant has provided answers, so there is nothing to compel.  Target has other remedies at its disposal if it believes that it has received conflicting information in response to interrogatories.

Target has also asked this Court to compel Mr. Grant to sign a number of forms authorizing the release of certain information. This Court declines to compel Mr. Grant to sign the *Authorization for Release of Employment Records*.  Such records are not within Mr. Grant's custody or control, and therefore he has no obligation to produce them in response to discovery requests. See Fed.R.Civ.P. 34(a)(1).  Target may obtain these records itself through subpoenas.

Target also asks for an order compelling Mr. Grant to sign

13

an *Authorization for Release of Mental Health Records and Information, the Authorization for Release of Medical Records and Information,* and to execute a Form 4506- Request for a Copy of Tax Returns. Unlike records from other employers, Mr. Grant has control of his medical and tax records to the extent that he (and only he) can authorize either his doctors or the Internal Revenue Service to release this information; that is, he has the "legal right to obtain the documents on demand." In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995). Further, to the extent that he claims either emotional suffering due to Target's actions, or loss of income, documents which pertain to medical and mental health information or tax information are discoverable. However, the Court believes the appropriate way for such documents to be produced is not through the signing of releases or authorizations to be used by an opposing party, but by the party who has been asked for these records (i.e. Mr. Grant) to obtain them himself and then produce the relevant documents to Target. Mr. Grant is warned that if he does not produce relevant and responsive documentation, he will be precluded from himself relying on that information in this litigation to show either that he obtained medical treatment for any emotional injury he attributes to Target, or that he suffered wage loss, and if he does not produce complete information about the wages he has earned since leaving Target - information that will define his economic damages - he could be prevented from testifying about this entire subject matter.

As to Mr. Grant's July 29, 2011 objection to providing additional documents because they were "highly privileged in nature" and "not for public viewing," any party who claims that information is not subject to discovery because it is privileged must expressly assert the specific privilege involved (e.g., the attorney-client privilege, the self-incrimination privilege found

14

in the Fifth Amendment, or some other applicable privilege) and then list the documents being withheld on grounds of privilege in a "privilege log." Fed. R. Civ. P. 26(b)(5)(a) requires that this log be produced to the opposing party and that it describe the nature of the documents, communications or tangible things not produced in a manner that, without revealing information itself that is privileged or protected, will enable that party to assess the claim of privilege. Under Local Rule 26.1(b), any privilege log produced must cross reference the specific request to which each assertion of privilege pertains and shall list documents withheld in chronological order, beginning with the oldest document for which a privilege is claimed. If Mr. Grant simply feels these matters are "confidential" and do not fall into the traditional privilege categories, his proper recourse is to seek an agreed protective order from Target or to ask this Court for a protective order pursuant to Fed. R. Civ. P. 26(c), which would allow Target to see these documents but not to use them for any purpose not related to this case.

As far as interrogatory answers are concerned, although Mr. Grant has attempted to answer Target's interrogatories three times, many of his answers are still incomplete. Further, he has never properly responded to any of Target's requests for production of documents because Fed.R.Civ.P. 34(b)(2)(B) requires a written response which indicates, by request or category, either that the documents will be produced or that the party objects to producing that category of documents.

As a final introductory matter, the Court is aware that Mr. Grant's deposition has already been taken. To the extent that Target's motion to compel addresses matters that were also covered in Mr. Grant's deposition, Mr. Grant need not repeat what he has already testified to. If he believes that the answers to interrogatories are contained in his deposition, he may simply

15

refer to the appropriate pages of his deposition as his answer.
It is certainly not the Court's intention to force him to provide
multiple answers to the same set of questions.

This Court will now advise Mr. Grant of his discovery
obligations with respect to each interrogatory and document
request at issue.  This Court first turns to Mr. Grant's
obligations to answer Target's interrogatories.

### 2. Interrogatories

### a. Interrogatory 1

This Interrogatory asks for all names by which Mr. Grant has
been known, the place and date of his birth, drivers' license
numbers, and residency addresses of the past ten years.  In Mr.
Grant's response, he listed his name and current address and,
citing his right to privacy, gave no other information requested.
The right to privacy is not a recognized privilege in this
context, and this information is discoverable.  Mr. Grant is
ordered to provide the additional information requested.

### b. Interrogatory Nos. 3-5 and 13

Interrogatory no. 3 seeks the identity of each person Mr.
Grant contacted, questioned, or interviewed concerning facts
alleged in his complaint.  Mr. Grant responded "see witness list"
and attached a witness list to his responses.  The witness list,
however, is simply a list of 17 names (only 7 of which have last
names and 7 of which have phone numbers), briefly describing each
person's involvement with Mr. Grant's claims.  That does not
fully respond to what Target has asked, and it is entitled to
know what others may know about this case.  Mr. Grant is ordered
to provide more complete information regarding the identity of
each individual, including each individual's last name, in
response to this question.  Moreover, Mr. Grant is ordered to
list these individuals' names specifically in his response to
interrogatory no. 3 instead of grouping them together in a list

16

that also includes answers to other interrogatories.

Interrogatory no. 4 asks for the full name, address, and telephone number of any person who provided Mr. Grant with a written or verbal statement concerning his claims, the date each statement was made, the full name and address of the person taking each statement, whether the statement was written, oral, videotaped and/or tape recorded, and the full name and address of the present custodian of each statement. It then asks Mr. Grant to identify all non-privileged documents relating to such statements. In response, Mr. Grant again stated "see witness list." The witness list, brief as it is, does not answer this question either. Mr. Grant is ordered to provide this complete information in response to Target's interrogatory no. 4 and is additionally ordered specifically to list these individuals in his response to interrogatory no. 4 instead of grouping them together in a list that also includes answers to other interrogatories.

Interrogatory no. 5 asks Mr. Grant for the date he had any conversations, meetings, or written communications with any present or former Target employee concerning the topic of his lawsuit, the identity of persons present, and a summary of the statements made. He is also asked to identify any documents related to such contacts. Mr. Grant again responds "see witness list," which, for the same reasons stated above, is not fully responsive. Mr. Grant is ordered to provide this complete information in response to Target's interrogatory no. 5 and is additionally ordered specifically to list this information in response to interrogatory number 5, instead of grouping it together in a list that also includes answers to other interrogatories.

Interrogatory no. 13 asks Mr. Grant to identify any admissions made by Target; when and where the admission was made;

the persons present when the admission was made; any notes, tapes or recordings of the admission; and the identity of the custodian of the documented admissions.  Again, in response to this question, Mr. Grant says "see witness list." If Mr. Grant believes any Target employee admitted anything of relevance to this case to him, he must provide complete information in response to interrogatory no. 13 and must specifically list this information in response to interrogatory no. 13 instead of grouping it together in a list that also includes answers to other interrogatories.

c. <u>Interrogatory No. 8</u>

Interrogatory no. 8 asks Mr. Grant to identify any other complaints, claims, or lawsuits he has initiated in which he alleged unlawful workplace practices, including, but not limited to, race discrimination. Mr. Grant responded "not applicable." However, this Court's own docket reveals a 1999 lawsuit for race discrimination in employment against his former employer, Friends of the Homeless.  <u>See Mark Grant v. Friends of the Homeless, et al.</u>, No. 2:99-cv-00235 (S.D. Ohio).  This information may be relevant. Mr. Grant is ordered to respond completely to interrogatory no. 8 and provide information about any other claims or lawsuits he has filed in which he alleged unlawful workplace practices.

d. <u>Interrogatory No. 11</u>

Interrogatory no. 11 requests that Mr. Grant identify any computer, fax machine, mobile phone, printer, PDA, or other electronic communication device that he used from 2007 to the present to communicate with any person regarding his claims. Although Target took issue with Mr. Grant's original response to this interrogatory in its motion to compel, Mr. Grant has since changed his answer to state that "No cell phone records of communication is available or related emails" and Target has not

18

addressed this change in its Reply Brief to this Court.  Thus, the Court will assume Target is satisfied with Mr. Grant's new answer and Mr. Grant need not provide additional information to interrogatory no. 11.

### e. Interrogatory No. 12

In interrogatory no. 12, Target asks Mr. Grant to identify by name all individuals known to him that have personal knowledge regarding the facts and circumstances of his allegations and to describe each document that supports his allegations.  It then goes on specifically to list the allegations from Mr. Grant's complaint. Mr. Grant answered "I was assigned special project every week by Mark Nealon.  See witness list and forthcoming affidavits.  Still awaiting request for copies of pictures taken, complaint, and formal complaint."  Other than identifying Mark Nealon, Mr. Grant did not identify any persons who or describe any documents that support the allegations in his Complaint.  Mr. Grant is therefore ordered to identify all individuals known to him that have personal knowledge regarding the facts and circumstances of his allegations and to describe each document that supports his allegations to the extent that his answers to other interrogatories do not supply this information.

### f. Interrogatory No. 14

In interrogatory no. 14 Mr. Grant was asked to state with particularity the nature and amount of all damages he was seeking from Target as a result of the allegations in his complaint.  It asks for the specific amount of damages he is seeking for his violation of Title VII, loss of wages and fringe benefits, loss of future earnings and benefits, compensatory damages, punitive damages, costs, and all other such relief and it asks him to describe the means by which each figure was calculated.  Mr. Grant responded "There is no price tag for trying to destroy someone's self esteem and family life. . . Loss of wages due to

termination. Difficulty finding employment.  Loss of the ability to provide a good Christian education for children." (Doc. #33, p.9). Mr. Grant did not provide the specific amount of damages he is seeking for each category of damages listed in interrogatory no. 14, nor did he describe the means by which each figure was calculated.  Although some of these categories of damages may be difficult to quantify, Mr. Grant must still state how much he will be asking for in each category.  If the category of damages is something that can be calculated, such as lost wages, he does have to provide that calculation.  In fact, this type of information is also the subject of the mandatory disclosures described in Fed.R.Civ.P. 26(a)(1).  Mr. Grant is therefore ordered to provide this information.

### g. Interrogatory No. 15

Interrogatory no. 15 asks Mr. Grant if he was claiming injury to his physical or mental health, including emotional distress, as a result of any treatment by or decision of Target. If so, it asks him to state the full name and address of any medical providers who have treated him for such conditions and the dates on which expenses were incurred, when the services were rendered, the person providing the services, whether he has an appointment to return, and to identify documents relating to those services.  In response, Mr. Grant stated "There is no true price for the damages Target has caused for me and my family. Extreme stress due to the major financial changes in life.  Did not seek medical attention." This answer does appear to respond to Target's request.  Mr. Grant has stated he is claiming injury for extreme stress and that he did not seek medical attention. Because he did not seek medical attention, the remainder of Target's questions are not relevant.

### h. Interrogatory No. 16

Interrogatory no. 16 asks Mr. Grant if he was in any way

impaired in his ability to work due to his own or someone else's physical and/or mental condition since his separation from Target. If so, he must state the dates he was impaired; the nature of each condition or treatment; the employer (if any) for whom he was working when the condition first arose; identify all persons responsible for treating him; any hospitals or facilities where he was treated; and all documents that refer, relate to, or describe his condition and treatment. Mr. Grant responded by stating "Plaintiff will never ever forget what transpired during employment with Target. Plaintiff will never be able to trust or based on what happened exit my memory while in a working environment. Extreme stress due to the major financial changes in life. Did not seek medical attention." Mr. Grant's response does not answer the specific questions regarding whether or not he was actually unable to work for a time because of his own or someone else's physical or mental condition. This is relevant because, for example, if Mr. Grant became ill or had to care for a family member and was not able to work for a period of time, Target would not be responsible for any wages lost due to those circumstances (unless Mr. Grant claims the illness was related to Target's treatment of him - and then, of course, he would have to provide details about such a claim). Therefore, Mr. Grant is ordered to respond to all the specific questions in interrogatory no. 16.

### i. Interrogatory No. 17

Interrogatory no. 17 asks Mr. Grant to identify additional sources of income he has received since January 1, 2007, excluding his income from Target, and the dates of commencement and termination of such income and the total amount of each source. He answered that he "received unemployment benefits . . ." (Doc. #33, p. 11). He did not list, however, the dates of commencement and termination of his unemployment benefits or the

21

total amount.  He also did not list any other income, although it
appears he may have had some.  Again, this relates to his lost
wage claim and it is discoverable information.  He is therefore
ordered to provide this additional information in his response to
interrogatory no. 17.

### j. Interrogatory No. 18

Interrogatory no. 18 asks Mr. Grant to identify what steps
he has taken to obtain new employment and/or mitigate his damages
since his job with Target.  It asks him to list every application
for employment he made, including the position, the potential
employer, the date he applied for the position, how he applied or
inquired into the position, salary information and other
employment benefits of the position, the person with whom he
communicated regarding each position, whether he was offered the
position, the terms and conditions of any offer or employment or
business proposal made to him, whether he accepted or declined
the position, and his reason for rejecting any offer.  Mr. Grant
answered "As of July 7, 2011, Plaintiff was offered permanent
employment. See attached." This answer does not address other
information requested in interrogatory no. 18 and is therefore
incomplete.  Mr. Grant is ordered to provide Target with the
additional information requested in interrogatory no. 18,
although the Court also assumes that this was explored during his
deposition, since this kind of questioning usually takes place at
a deposition.

### k. Interrogatory No. 19

Interrogatory no. 19 asks Mr. Grant to state the name and
address of all employers by whom he has been employed before,
during, and since his employment with Target ended, the positions
in which he was employed, the dates of employment, the identity
of individuals to whom he reported in each job, the salary and/or
compensation provided in such position, the benefits provided by

such employer, whether he participated in such benefit programs, whether he was counseled or disciplined, and if his employment ended, the reason why.  In response, Mr. Grant has answered "Target has all of Plaintiff's personnel records on file which contains my past employment from the application for employment along with a copy of Plaintiff's resume."  Mr. Grant's records of his employment may well be contained in his personnel file at Target, but this does not excuse Mr. Grant's obligation to produce them and answer the additional questions posed by this interrogatory.  Moreover, Target's personnel file on Mr. Grant would not have any information concerning Mr. Grant's employment after working for Target.  Mr. Grant is hereby required to answer all of the questions outlined in Interrogatory no. 19, especially those about employment obtained after he left Target.

l. <u>Interrogatory No. 20</u>

Interrogatory no. 20 asks Mr. Grant to identify, for each element of damages, the nature of the damage claimed (e.g. each category of lost wages, costs, interests, compensatory damages); the amount claimed; identify all writings, documents or things, including the location thereof, which will substantiate his claim for such damages; state with particularity his method of computing his claimed damages; and identify all documents relating to his claimed damages. Mr. Grant replied "$300,000 in damages for racial discrimination, retaliation, and wrongful termination."  Again, some breakdown of this number is asked for, and if Mr. Grant's answer to a previous interrogatory about damages does not provide that information, he must provide it here.

m. <u>Interrogatory No. 22</u>

Interrogatory no. 22 asks Mr. Grant to identify each document responsive to Target's requests for production of documents, but which was not produced.  It asks him to identify

23

the document request to which the document was responsive but not
produced, a brief description of the document, and the reasons
for the non-production. Mr. Grant's response was "Plaintiff does
not trust anyone with anything to do with Target when it comes to
my personal or financial information. Please see attached
documents plaintiff has provided." Personal and financial
information is not privileged. See De Marco v. C & L Masonry,
Inc., 891 F.2d 1236, 1240 (6th Cir. 1989); Credit Life Ins. Co.
v. Uniworld Ins. Co., 94 F.R.D. 113, 121 (S.D. Ohio 1982). Mr.
Grant is being ordered to produce this and other information he
deems sensitive, although, of course, he and Target can agree to
a protective order restricting its use (or he can ask for one,
something he has not done). If, after he produces additional
documents, he still has documents which Target has asked for but
which he will not produce, he should describe them in response to
this interrogatory.

n. <u>Interrogatory No. 24</u>

In its original motion to compel, Target argued that Mr.
Grant's response to interrogatory no. 24 is insufficient. That
interrogatory asks Mr. Grant to identify whether he used e-mail,
other web-based communication services, or text messaging to
communicate with any of the persons identified in interrogatory
nos. 2-5 about topics identified in those interrogatories. If
so, he was asked to state the name of each provider. In his
original answers, Mr. Grant stated that the request was an
"invasion of privacy" and that he would not give access to his
"personal information." Mr. Grant, however, has since changed his
answer to "Plaintiff rarely uses computer and does not
participate in social networking. Questions are not applicable."
Mr. Grant's new answer indicates that he has not used any of
these types of devices to communicate regarding this case.
Because Target did not raise an objection to Mr. Grant's most

recent response in its reply, this Court deems such a response
sufficient.

### 3. Requests for Production of Documents

Fed. R. Civ. P. 34 permits a party to serve on any other
party a request within the scope of Rule 26(b) to produce and
permit the requesting party to inspect, copy, test, or sample any
designated documents or electronically stored information within
the responding party's possession, custody, or control. Rule 34
requires that the responding party respond in writing within 30
days and state that the inspection or related activities will be
permitted as requested or state an objection to the request,
including the reasons.  An objection to part of a request must
specify the part being objected to and permit inspection of the
rest.  When producing documents, a party must produce them as
they are kept in the usual course of business or must organize
and label them to correspond to the categories in the request.

At this point, Mr. Grant has produced a number of documents
to Target, but he has never indicated which requests these
documents were responsive to, making it difficult for Target and
this Court to know to which requests for production of documents
Mr. Grant responded and to which he did not.  He has never
provided the responses "in writing" that Rule 34 requires.  Nor
has he objected specifically to any of Target's requests or
organized and labeled his documents so that each corresponds to
the categories in the request.  Mr. Grant is therefore ordered to
respond, in writing, to all of Target's requests for production
of documents, to specifically object to those portions that he
has objections to, and to organize and label his documents so
that each document corresponds to the categories in the requests.
Mr. Grant's responses and objections need not be detailed.  He
can simply state the grounds for his objections, for example,
that he does not have these types of documents or that these

25

documents do not exist.

### 4. Mr. Grant's Sur-Reply

Instead of giving this Court reasons why his discovery responses are sufficient, Mr. Grant shifts blame from himself to Target by alleging that Target has failed to produce certain information or misplaced Mr. Grant's W2 form.  But "[t]he rules governing discovery do not permit one party to condition his discovery obligations on the other party's discovery responses." Moses v. Sterling Commerce (America), Inc., No. Civ.A. 2:99-CV-1357, 2003 WL 23412984, 3 (S.D. Ohio July 1, 2003).  If Mr. Grant take issue with Target's responses to his discovery, his remedy is not to withhold his own responses, but to file his own motion to compel pursuant to Fed. R. Civ. P. 37.

Mr. Grant is therefore ordered to provide the above discovery responses to Target.  Again, he should be aware that there are potentially serious consequences for not cooperating in discovery which could include an order which prohibits him from introducing, referring to, or relying upon documents or information which he failed to produce during pretrial discovery, or even an order dismissing his action in whole or in part.  The Court assumes that now that it has given Mr. Grant some additional direction concerning discovery, he will fully comply with his obligations.

### 5. Attorneys' Fees

With respect to Target's request for attorneys' fees associated with the filing of its Motion to Compel, Fed. R. Civ. P. 37(a)(5) authorizes an award of expenses, including attorneys' fees, unless any opposition to the motion is substantially justified, or other circumstances make an award of expenses unjust.  Under the specific circumstances of this case, which indicate that Mr. Grant did make an effort to provide discovery but may have misunderstood some portion of his legal obligations, the Court finds Mr. Grant's opposition to be substantially

justified and no attorneys' fees will be awarded.  That may not
be the case, however, if Target is forced to file additional
motions about discovery.

   III. <u>Target's Motion for an Order Extending the Discovery
                    Schedule (Doc.#38)</u>

   Target has filed a motion (Doc. #38) requesting this Court
to extend the discovery schedule and dispositive motion deadlines
by 60 days.  Because Mr. Grant has been permitted to file his
amended complaint and Target's Motion to Compel has been granted,
effectively reopening discovery, this Court orders that case
schedule be extended as follows:

   1.  All discovery shall be completed within six months from
the date of this order.

   2.  Any motions for summary judgment shall be filed within
one month after the completion of discovery.

   The current trial date is vacated.

   IV. <u>Target's Motion for Summary Judgment (Doc. #41), Target's
   Motion to Strike Four Affidavits (Doc. #44), Target's Motion to
   Strike Plaintiff's Opposition to Target's Motion to Strike or in
   the Alterative, a Reply in Support of Defendant's Motion to
   Strike (Doc. #55), and Target's Motion to Strike Plaintiff's
   Response to Target's Reply in Support of its Motion for Summary
                    Judgment (Doc. #56)</u>

   Given that this order allows Mr. Grant to amend his complaint
to add four additional defendants and reopens discovery, this
Court denies Target's motion for summary judgment (Doc. #41)
without prejudice, subject to refiling in accordance with the new
dispositive motions deadline set by this Court.  Similarly,
Target's motion to strike four affidavits (Doc. #44), its motion
to strike Mr. Grant's opposition to the motion to strike or
alternatively a reply in support of Target's motion to strike
(Doc. #55), and Target's Motion to strike Mr. Grant's response
to Target's reply in support of its motion for summary judgment
(Doc. #56), are also denied without prejudice subject to refiling

27

in connection with its motion for summary judgment.

V. <u>Target's Motion for Order to Schedule Status Conference and Final Pre-Trial (Doc. #52)</u>

Target has recently requested that this Court hold a status conference to discuss the pendency of the motions addressed in this order and the effect of the pending motions on the trial date. It also requests that this Court set a final pre-trial conference 30 days in advance of the April 16, 2012 trial in this case. Given the fact that the trial date is being vacated, this Court denies Target's Motion for order to schedule status conference and final pre-trial as moot (Doc. #52).

VI. <u>Conclusion</u>

Based on the foregoing, Mr. Grant's renewed motion to amend his complaint (Doc. #29) is granted; Target's motion to compel discovery (Doc. #30) is granted; Target's motion to extend the discovery schedule (Doc. #38) is denied as moot; Target's Motion for Summary Judgement (Doc. #41), Target's motion to strike four affidavits (Doc. #44), Target's motion to strike Mr. Grant's opposition to the motion to strike or alternatively a reply in support of Target's motion to strike (Doc. #55), and Target's Motion to strike Mr. Grant's response to Target's reply in support of its motion for summary judgment (Doc. #56), are denied without prejudice; and Target's motion to schedule a status conference and final pre-trial conference (Doc. #52) is denied as moot.


/s/ Terence P. Kemp
United States Magistrate Judge